IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SIERRA CLUB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 13-CV-356-JHP |
| | ) |
| OKLAHOMA GAS AND ELECTIC COMPANY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court are Defendant Oklahoma Gas and Electric Company's ("OG&E") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 17); Plaintiff Sierra Club's Response in Opposition to OG&E's Motion to Dismiss (Doc. No. 22); and OG&E's Reply to Sierra Club's Reply (Doc. No. 25). For the reasons set forth below, OG&E's Motion to Dismiss is **GRANTED in part and DENIED in part**.

## BACKGROUND

**A.  Procedural History**

On August 12, 2013, Sierra Club initiated this action under the Clean Air Act's ("CAA") "citizen suit" provision, 42 U.S.C. § 7604, which allows any person to bring an action to enforce the CAA. Sierra Club's allegations stem from OG&E's operation of a coal-fired power plant located in Muskogee, Oklahoma (the "Muskogee Plant"). In its Complaint, Sierra Club asserts two claims: (1) claims for relief based on OG&E's failure to obtain a permit required by the CAA prior to undertaking the modification of certain parts of the Muskogee Plant in March of

2008 ("PSD claims") [1]; and (2) a claim for relief pursuant to 42 U.S.C. § 7604(a)(3), based on emissions of air pollutants at the Muskogee Plant that exceeded the applicable limits on opacity and particulate matter (TSP) set forth in Permit PSD-OK-57 ("Opacity and TSP claim").  On November 4, 2013, OG&E filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the PSD claim is time-barred pursuant to five-year limitations period prescribed in 28 U.S.C. § 2462, and the Opacity and TSP claim must be dismissed for failure to comply with the pleading standards set out in Fed. R. Civ. P. 8(a)(2). (Doc. No. 17.)

In its motion, OG&E argued that emissions at the Muskogee Plant did not increase after the March 2008 Project (Doc. No. 17, p. 6 n.1) and submitted a chart in support of its position (*Id.* at Ex. 3).  The Court recognizes that Rule 12(d) provides that "[i]f, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." *See also Torres v. First State Bank of Sierra County*, 550 F.2d 1255, 1257 (10th Cir. 1977).  However, to be sure, the Court has complete discretion in deciding whether to consider matters outside of the pleadings. *See Harper v. Lawrence County, Ala.,* 592 F.3d 1227, 1232 (11th Cir. 2010); *Stahl v. U.S. Dept. of Agriculture,* 327 F.3d 697, 701 (8th Cir. 2003). Here, the Court declines to consider materials outside of the pleadings submitted by OG&E and the arguments associated therewith in reaching its conclusions.  Accordingly, OG&E's motion to dismiss is not converted into a motion for summary judgment.

---

[1] The Court notes that Sierra Club asserts two distinct PSD Claims: (1) a PSD claim for civil penalties, and (2) a PSD Claim for declaratory and injunctive relief.

**B.  Relevant Legal Framework**

**1.  CAA Framework**

Congress passed the CAA "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).  Responsibility for administering the CAA is split between the federal and state governments.  The federal government, through the Environmental Protection Agency ("EPA"), is tasked with determining national air quality standards, *see id.* § 7409, and the states are responsible for implementing programs to attain and maintain those standards, *see id.* §§ 7407(a), 7410.

Consistent with this framework, the EPA promulgated National Ambient Air Quality Standards ("NAAQS") under the CAA for certain pollutants.  *Id.* § 7409;  *see generally* 40 C.F.R. Part 50.  Under the CAA, the EPA determines whether areas of a state comply with the NAAQS for those pollutants.  The CAA then directs the states to adopt State Implementation Plans ("SIPs") to achieve and maintain NAAQS.  42 U.S.C. § 7410(a).  These SIPs are submitted to the EPA for approval.  *Id.* § 7410(a), (k).  The CAA vests primary SIP enforcement authority in state or local governments.  *See Espinosa v. Roswell Tower, Inc.*, 32 F.3d 491, 492 (10th Cir. 1994).

**2.  The PSD Program**

The CAA directs states to implement and maintain NAAQS through the New Source Review ("NSR") program.  For areas with air that falls below standards ("nonattainment areas"), the Nonattainment NSR program seeks to ensure that new emissions will not thwart progress towards meeting NAAQS.  In areas with air that meets standards ("attainment areas"), the PSD program requires that any new emissions will not significantly erode air quality.

The PSD program addresses the impact on ambient air quality from both new construction of, and modification to, large pollutant-emitting facilities in attainment areas. 42 U.S.C. §§ 7470-7492. The CAA requires states to include PSD programs in their SIPs, which are subject to EPA approval. *Id.* § 7470. The EPA has approved Oklahoma PSD regulations as part of the SIP. 48 Fed. Reg. 38,635 (Aug. 25, 1983); 40 C.F.R. Part 52 Subpart LL. In 2008, Oklahoma's PSD rules were located at Oklahoma Air Pollution Control Regulation ("OAPCR") 1.4.4 in the federally approved SIP.

With the EPA's approval of Oklahoma's SIP, the Oklahoma Department of Environmental Quality ("ODEQ") has primary authority to enforce PSD requirements in Oklahoma and make reasonable "best available control technology" determinations. *See Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 488-490, 495 (2004). Part C of the CAA requires states to adopt emissions limitations and other measures as necessary to prevent significant deterioration of air quality. In accordance with Part C of the CAA, 42 U.S.C. §§ 7470-7492, which requires states to adopt emissions limitations and other measures as necessary to prevent significant deterioration of air quality, Oklahoma's SIP requires a "major emitting facility," such as the Muskogee Plant, to obtain a Prevention of Significant Deterioration ("PSD") permit from ODEQ prior to undertaking any "major modification" to the power plant. OAPCR 1.4.4 (1983).

**C. Relevant Factual Background**

OG&E is authorized to operate the Muskogee Plant under an operating permit issued by the ODEQ in accordance with Oklahoma's federally approved SIP for administering federal CAA requirements. In March of 2008, OG&E began making physical changes to the Unit 6 Boiler at the Muskogee Plant (the "March 2008 Project"), "which included replacing the Unit's

4

economizer and economizer tube support system and modifying the superheater loops in boiler." (Doc. No. 3, 10 ¶ 31.)  OG&E did not obtain a PSD permit prior to beginning the March 2008 Project.

On August 9, 2013, Sierra Club brought the instant action against OG&E.  In its Complaint, Sierra Club alleges that OG&E's failure to obtain a PSD permit prior to beginning the March 2008 Project constitutes a violation of the CAA.[2]  Sierra Club also asserts a claim pursuant to 42 U.S.C. § 7604(a)(3), alleging that OG&E violated the CAA by exceeding its opacity and total suspended particulate ("TSP") permit limits at Muskogee Unit 6.  Sierra Club specifically alleges the following:

> On numerous occasions, [OG&E] emitted air pollution from the stack of Muskogee Unit 6 in amounts that exceeded the limits on opacity and particulate matter (TSP) set fourth in Permit PSD-OK-57.

(Doc. No. 3, 17 ¶ 61.)  Sierra Club seeks declaratory and injunctive relief, civil penalties, and an order requiring OG&E to remediate environmental damage.  On April 1, 2013, the parties entered into a tolling agreement.

## DISCUSSION

Fed. R. Civ. P. 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6).  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).  With regard to what must be pled to avoid dismissal, the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S.

---

[2] The parties dispute whether the March 2008 Project was exempt from the definition of a "major modification" because it was "routine maintenance, repair and replacement."  OAPCR 1.4.4(b)(2)(C)(i).

5

662, 677 (2009), described the standard that must be met as "facial plausibility." In this context, "plausibility" refers to the scope and degree of specificity of the allegations in the complaint. *Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012). Furthermore, "although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 412-13 (10th Cir. 2013) (quoting *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

Although Fed. R. Civ. P. 8(a)(2) still requires the pleader to supply only "a short and plain statement of the claim," that statement must provide more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or generalized allegations of conduct that "encompass a wide swath of conduct, much of it innocent." *Id.* In this regard, the plaintiff must do more than articulate a set of facts that could "conceivabl[y]" or "possibly" give rise to a claim; he must "nudge[ ]his claims across the line from conceivable to plausible." *Id.* Of course, the degree of specificity that will be required will necessarily vary based on the context of the case. *Id.* Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See Iqbal,* 556 U.S. at 679. Ultimately, the question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon,* 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

**A. PSD Claims**

OG&E argues that Sierra Club's PSD Claims should be dismissed as time barred. The parties in this case agreed to toll the statute of limitations beginning April 1, 2013. (Doc. No. 17,

Ex. 3.) Therefore, the question is whether Sierra Club's claim "accrued" more than five years prior to April 1, 2013. OG&E contends that Sierra Club's PSD claim for civil penalties must be dismissed because it was not brought within the applicable five-year limitations period set out in 28 U.S.C. § 2462. Next, OG&E argues that Sierra Club's PSD claims for injunctive and declaratory relief are also barred pursuant to the concurrent remedy doctrine. The Court addresses each of these arguments below.

1. **PSD Claim for Civil Penalties**

The CAA does not specify the period during which claims thereunder may be brought. Therefore, the general federal statute of limitations is applicable. The general statute of limitations for civil enforcement actions provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued ... .

28 U.S.C. § 2462. Generally speaking, a claim "first accrues" for purposes of § 2462 on the date that a violation first occurs. *Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 502 F.3d 1316, 1322 (11th Cir. 2007) (citing *3M Co. (Minn. Mining & Mfg.) v. Browner*, 17 F.3d 1453, 1462 (D.C. Cir. 1994)).

"[T]here is a decided split of authority on the legal question of whether a violation of the PSD … program occurs when a facility is constructed/modified or continues each day that the facility operates without coming into compliance." *United States v. Cemex, Inc.*, 864 F. Supp. 2d 1040, 1047 (D. Colo. 2012) (collecting cases). "The majority rule is that a failure to obtain a PSD permit is a one-time violation and is not a continuing violation." *United States v. EME Homer City Generation, L.P.*, 823 F. Supp. 2d 274, 286-87 (W.D. Pa. 2011) (collecting cases); Sierra *Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1014 (8th Cir. 2010) (holding that PSD

7

requirements "are conditions of construction, not operation" and, therefore, that operating a facility without complying with preconstruction requirements is not itself a violation of the PSD program); *Tennessee Valley Authority,* 502 F.3d at 1322-23 ("violations of preconstruction permitting requirements occur at the time of construction, not on a continuing basis"). Furthermore, courts have logically concluded "that the *last* possible moment at which a preconstruction violation occurs is 'when the actual construction is commenced, and not at some later point in time.'" *Sierra Club v. Franklin Cnty. Power of Illinois, LLC*, 546 F.3d 918, 928 (7th Cir. 2008) (quoting *United States v. Illinois Power Co.*, 245 F. Supp. 2d 951, 957 (S.D. Ill. 2003) (emphasis original)); *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 285 (3d Cir. 2013) ("The violation is complete when construction [or modification] commences without a permit in hand.") (quoting *United States v. Midwest Generation, LLC*, 720 F.3d 644, 647 (7th Cir. 2013)); *Otter Tail Power Co.*, 615 F.3d at 1018 ("It is thus clear that each of Sierra Club's PSD claims first accrued upon commencement of the relevant modification at Big Stone."); *Tenn. Valley Auth.*, 502 F.3d at 1316 ("Violations of the preconstruction permitting requirements occur at the time of construction, not on a continuing basis.") (internal quotations omitted).

After reviewing Oklahoma's SIP, the Court finds no evidence that it transforms the PSD permitting requirements into operating conditions. Oklahoma's SIP prohibits construction or modification of a source without "first obtaining" the necessary permit. OAPCR 1.4.2(a)(1). This provision implemented the EPA's direction for all SIPs to contain a requirement that no source needing a PSD permit "shall begin actual construction" without a permit. 40 C.F.R. 51.24(i)(1) (1983) (*now renumbered to* 40 C.F.R. 51.166(a)(7)(iii)). Therefore, the PSD permit requirement as implemented by Oklahoma's SIP is a preconstruction requirement, the violation

of which is complete at the time construction or modification commences prior to obtaining the proper permit.

In accordance with the majority rule, the Court finds that OG&E's violation of the PSD permit requirement occurred at the time construction on the March 2008 Project commenced. Therefore, Sierra Club's PSD claim for civil penalties is time barred because it was brought more than five years after the March 2008 project commenced.

**2. PSD Claim for Equitable Relief**

The Court also finds that Sierra Club's PSD claim for injunctive and declaratory relief is barred by the concurrent remedy doctrine. The concurrent remedy doctrine provides that "when the equity jurisdiction of the federal court is concurrent with that at law, or the suit is brought in aid of a legal right, equity will withhold its remedy if the legal right is barred by the local statute of limitations." *Russell v. Todd*, 309 U.S. 280, 289 (1940); *see also Grynberg. v. Total S.A.*, 538 F.3d 1336, 1353 (10th Cir. 2008). In the context of PSD claims brought under the CAA, a citizen suit whose claims for civil penalties are time-barred is properly precluded from seeking equitable remedies. *Otter Tail Power Co.*, 615 F.3d at 1019 ("[B]ecause Sierra Club's PSD civil penalty claims are barred by the statute of limitations, the equitable remedies it seeks under those causes of action are barred as well."); *Tennessee Valley Auth.*, 502 F.3d at 1322 (concurrent remedy doctrine bars citizen suit seeking declaratory and injunctive relief that was filed with time-barred claim for civil penalties under Clean Air Act).[3] As explained above, the Court finds Sierra Club's PSD claim for civil penalties to be untimely. Consequently, Sierra Club's PSD claim for injunctive and declaratory relief must also be dismissed as time barred.

---

[3] The only cases cited by Sierra Club that do not apply the concurrent remedy doctrine to equitable claims in the PSD context are cases where the government is the plaintiff. Whatever the merits of cases involving the government may be, their logic is inapplicable to Clean Air Act citizen suits by Sierra Club. *Otter Tail Power Co.*, 615 F.3d at 1018-19.

9

**B. Opacity and TSP claim**

OG&E also seeks dismissal of the Opacity and TSP claim. OG&E argues that Sierra Club's allegations fail to meet the pleading standards set out Fed. R. Civ. P. 8(a)(2). After thoroughly reviewing the allegations in the Complaint, the Court finds that Sierra Club has alleged facts sufficient to survive OG&E's motion to dismiss.

Sierra Club specifically alleges the following with regard to its Opacity and TSP claim:

> On numerous occasions, [OG&E] emitted air pollution from the stack of Muskogee Unit 6 in amounts that exceeded the limits on opacity and particulate matter (TSP) set fourth in Permit PSD-OK-57.

(Doc. No. 3, 17 ¶ 61.) In addition, the Complaint includes a substantial amount of factual background regarding OG&E's alleged failure to obtain the necessary PSD permit prior to completing the March 2008 Project.

At the outset, the Court recognizes that Fed. R. Civ. P. 8(a)(2) may be met through a single allegation, so long as that allegation contains the facts necessary to state a claim for relief. Paragraph 61 of the Complaint, although merely a single sentence, encompasses the following allegations: air pollution was emitted; it was emitted from the stack at Muskogee Unit 6; there is a permit setting forth limits on opacity and particulate matter pollution for Muskogee Unit 6; the air pollution emitted from Muskogee Unit 6 exceeded those limits. Those are facts that give OG&E notice of the basis for a legal conclusion that OG&E violated the Clean Air Act based on the *prima facia* elements of a Clean Air Act permit violation claim: (a) there is an air pollution limit applicable to the defendant; (b) defendant emitted air pollution; and (c) the defendant's pollution exceeded the limit. Even if Sierra Club's Complaint was limited to Paragraph 61 of the Complaint, it would be sufficient under Fed. R. Civ. P. 8(a)(2) because it contained all of the facts necessary to support the claim.

The Court also finds the context of Sierra Club's Opacity and TSP claim important. Under the applicable regulations, OG&E is required to self-monitor its air pollutant emissions and report violations to the ODEQ. *E.g*., 40 C.F.R. § 60.45(a); OAC 252:100-9-7. Given this information asymmetry, OG&E's argument that it does not have fair notice of the basis for Sierra Club's claim that OG&E violated the CAA is unpersuasive. Furthermore, something seems awry about the idea that Sierra Club must specifically identify periods of excess emissions at the Muskogee Plant at this stage in the litigation prior to having an opportunity to seek this information through discovery.

In sum, the allegations regarding the Opacity and TSP claim in the Complaint, when viewed together and taken as true, state a plausible claim upon which relief may be granted. Accordingly, OG&E's motion to dismiss the Opacity and TSP claim must be denied.

## CONCLUSION

For the reasons detailed above, OG&E's Motion to Dismiss (Doc. No. 17) is **GRANTED in part and DENIED in part**.

**IT IS ORDERED** this 4th day of March, 2014.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma