**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SIERRA CLUB, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 6:13-cv-00356-JHP |
| | ) | |
| v. | ) | |
| | ) | Judge James H. Payne |
| OKLAHOMA GAS AND ELECTRIC | ) | |
| COMPANY, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**OKLAHOMA GAS AND ELECTRIC COMPANY'S
OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Donald K. Shandy (OBA No. 11511)
  DShandy@ryanwhaley.com
Patrick R. Pearce, Jr. (OBA No. 18802)
  RPearce@ryanwhaley.com
RYAN WHALEY COLDIRON SHANDY
PLLC
119 N. Robinson Avenue, Ste 900
Oklahoma City, OK 73102
Telephone:  (405) 239-6040
Fax:          (405) 239-6766

Date:  May 21, 2014

Brian J. Murray
  bjmurray@jonesday.com
Charles Wehland
  ctwehland@jonesday.com
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601-1692
Telephone:  (312) 782-3939
Fax:          (312) 782-8585

*Counsel for Defendant Oklahoma Gas and
Electric Company*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF MATERIAL FACTS............................................................................... 1

    A.    Consent Order for Previous Opacity Claims ........................................................ 1

    B.    Muskogee Unit 6 Permit History ........................................................................ 3

STANDARD OF REVIEW .................................................................................................. 4

ARGUMENT ....................................................................................................................... 5

I.    THE STATE CONSENT ORDER PRECLUDES ALL CLAIMS BASED ON OPACITY EMISSIONS PRIOR TO JUNE 2, 2011 ......................................................... 5

    A.    The Consent Order Resolved the Same Cause of Action that Sierra Club Asserts in This Case ............................................................................................ 7

    B.    The 2011 Consent Order Established a Final Judgment on the Merits.................. 9

    C.    Sierra Club's Interests Were Represented by ODEQ and Privity Exists With Respect to Parties in the Former Action ..................................................... 10

II.    ALL CLAIMS BASED ON OPACITY EMISSIONS AFTER THE 2011 CONSENT ORDER FAIL.................................................................................................. 12

III.    OG&E HAS DEMONSTRATED COMPLIANCE WITH THE PARTICULATE MATTER EMISSIONS LIMIT USING THE ONLY ADMISSIBLE EVIDENCE....... 14

CONCLUSION................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

CASES

*Adler v. Wal-Mart Stores, Inc.*,
   144 F.3d 664 (10th Cir. 1998) ...........................................................................4

*BP Amoco Chem. Co. v. Flint Hills Resources, LLC*,
   615 F. Supp. 2d 765 (N.D. Ill. 2009) ..............................................................14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)........................................................................................4, 5

*City of Tacoma v. Taxpayers of Tacoma*,
   357 U.S. 320 (1958)......................................................................................10, 11

*Ellis v. Gallatin Steel Co.*,
   390 F.3d 461 (6th Cir. 2004) .......................................................................13, 14

*EPA v. City of Green Forest*,
   921 F.2d 1394 (8th Cir. 1990) ..........................................................................11

*Feightner v. Bank of Okla.*,
   65 P.3d 624 (Okla. 2003) ...................................................................................6

*In re Hyde*,
   255 P.3d 411 (Okla. 2011)................................................................................10

*Ingram v. Knippers*,
   72 P.3d 17 (Okla. 2003).....................................................................................9

*Lockett v. EPA*,
   319 F.3d 678 (5th Cir. 2003) .......................................................................13, 14

*Marrese v. Am. Acad. of Orthopedic Surgeons*,
   470 U.S. 373 (1985)...........................................................................................6

*Read v. Read*,
   57 P.3d 561 (Okla. 2001) ...................................................................................7

*Resolution Trust Co. v. Greer*,
   911 P.2d 257 (Okla. 1995)..............................................................................7, 8

*Retherford v. Halliburton Co.*,
   572 P.2d 966 (Okla. 1977)..............................................................................7, 8

*Satsky v. Paramount Commc'ns, Inc.*,
  7 F.3d 1464 (10th Cir. 1993) ...................................................................8, 9, 10, 12

*Sierra Club v. DTE Energy*,
  No. 13-CV-11103, 2013 WL 6910431 (E.D. Mich. Oct. 7, 2013)...........................8

*Sierra Club v. Energy Future Holdings Corp.*,
  No. 12-108, Dkt. 240, at 16 (W.D. Tex. Feb. 10, 2014).......................................15

*Sierra Club v. Energy Future Holdings Corp.*,
  No. W-12-CV-108 (W.D. Tx. Feb. 10, 2014).......................................................14

*Sierra Club v. TVA*,
  430 F.3d 1337 (11th Cir. 2005) ............................................................................14

*Sierra Club v. Two Elk Generation Partners, L.P.*,
  646 F.3d 1258 (10th Cir. 2011) ....................................................................5, 6, 11

*State ex rel. Tal v. Oklahoma City*,
  61 P.3d 234 (Okla. 2002).........................................................................................7

*Wason Ranch Corp. v. Hecla Mining Co.*,
  No. 05-cv-00838-WDM-PAC, 2006 U.S. Dist. LEXIS 99086 (D. Colo. May 9, 2006)..........5

*White v. York Int'l Corp.*,
  45 F.3d 357 (10th Cir. 1995) .............................................................................4, 5

*Wilson v. City of Tulsa*,
  91 P.3d 673 (Okla. Civ. App. 2004) ...............................................................10, 12

**STATUTES**

28 U.S.C. § 1738........................................................................................................6

28 U.S.C. § 2462........................................................................................................8

42 U.S.C. § 7604(a)(3)..............................................................................................11

27A O.S. § 2-5-105(14) ..............................................................................................6

CAA ..........................................................................................................................11

Clean Air Act ..........................................................................................................5, 6

Clean Air Act ("CAA") ..............................................................................................3

**OTHER AUTHORITIES**

40 C.F.R. pt. 52.........................................................................................................6

40 C.F.R. pt. 60.........................................................................................................3

40 C.F.R. pt. 70 and.................................................................................................3

73 Fed. Reg. 79,400 (Feb. 27, 2009) .....................................................................15

17 Wright & Miller Fed. Prac. & Proc. Juris. § 4047 (3d ed. 1988)...........................10

## INTRODUCTION

The State of Oklahoma and Oklahoma Gas and Electric Company ("OG&E") have already litigated and resolved the remaining claim that Sierra Club now seeks to assert in this case.  Sierra Club is therefore precluded from trying to litigate it again before this Court.

In the previous case, OG&E and the Oklahoma Department of Environmental Quality ("ODEQ") entered into a consent order specifically addressing the opacity emissions at Muskogee Unit 6.  The consent order precludes Sierra Club from asserting a claim relating to opacity emissions occurring prior to the entry of the consent order because the order—by its very terms—resolved those claims.  Sierra Club also cannot assert a claim for opacity emissions occurring after the entry of the consent order because the order continues to impose compliance obligations on OG&E, and the evidence shows that OG&E is meeting those requirements.

The evidence also shows that OG&E meets the particulate matter emissions limit in its permit using the test methods prescribed by the permit.  By law, no other evidence of particulate matter emissions can be considered in this proceeding.  And to the extent Sierra Club wants to use opacity information to demonstrate particulate matter emission limit exceedances, it is unable to do so because of the consent order, and because opacity information simply does not prove an exceedance of the particulate matter emissions limit.

There is no genuine issue of material fact as to Sierra Club's remaining claim.  Accordingly, summary judgment for OG&E is required.

## STATEMENT OF MATERIAL FACTS

Pursuant to LCvR 56.1(b), OG&E sets forth the following material facts, to which no genuine issue of fact exists.

**A.    Consent Order for Previous Opacity Claims**

1.  In 2011, ODEQ brought claims in court against OG&E concerning alleged violations of emission limits at Muskogee Unit 6.  On June 2, 2011, the District Court of Oklahoma County, Oklahoma approved and entered a consent order between the ODEQ and OG&E (the "Consent Order") resolving allegations of noncompliance with the 20% opacity limit and failure to operate associated air pollution control equipment in a manner consistent with good air pollution control practices to minimize emissions at the Muskogee units from October 2005 to May 2011.  *See* Ex. 1, Order on Unopposed Motion for Entry of Consent Order (June 2, 2011); Ex. 2, Consent Order at ¶¶ 4-14.

2.  In that litigation, OG&E denied ODEQ's allegations of noncompliance with the 20% opacity limit on the grounds that any excess opacity emissions occurred during exempt periods when the boiler was not operating or when the unit was in shutdown mode.  *Id.* at  ¶ 16.  Rather than litigating the exemption issue, OG&E settled the state claims through the Consent Order.  The Consent Order required OG&E to pay ODEQ a total of $300,000, consisting of a penalty of $150,000 and an additional $150,000 payment into a supplemental environmental project fund.  *Id.* at ¶ 35.

3.  Effective June 2, 2011, the Consent Order also established a compliance schedule for reducing the percent of total time that opacity emissions exceed 20% at Muskogee for any reason in the future both during operating periods and during the periods that OG&E believes are exempt.  *Id.* at ¶ 33.  The Consent Order required OG&E to complete certain work related to the control technology for particulate emissions at the plant by January 1, 2013.  *Id.* at ¶ 34.

4.  OG&E has operated in compliance with the Consent Order since its entry.  The Consent Order remains in effect, and the opacity of emissions at Muskogee Unit 6 continues to be subject to the requirements of the Consent Order.

### B.    Muskogee Unit 6 Permit History

5.    EPA authorized the original construction of Muskogee Unit 6 in 1978 through issuance of PSD Permit Number PSD-OK-57, which incorporated an emission limit of 20% opacity through reference to the federal New Source Performance Standards ("NSPS") for Solid Fossil Fuel-Fired Steam Generators, 40 C.F.R. Part 60 Subpart D, and a particulate matter ("PM") emissions limit of 212 lb/hr expressed as total suspended particulate ("TSP").  *See* Ex. 3, PSD-OK-57 (issued March 30, 1978, modified Sept. 25, 1978).

6.    For a period of time after initial construction, the operation of Unit 6 was authorized by an operating permit issued under Oklahoma's State Implementation Plan ("SIP") for federal Clean Air Act ("CAA") requirements.  *See, e.g.*, Ex. 4, SIP Permit No. 77-084-0 (Sept. 6, 1985).  The SIP operating permit was later replaced with the onset of the Title V permitting program under 40 C.F.R. Part 70 and equivalent state regulations.

7.    ODEQ issued the first Title V operating permit for the Muskogee generating station on June 27, 2001.  Ex. 5, Title V Permit No. 97-136-TV.  A modification to that permit was issued on September 16, 2003.  Ex. 6, Title V Permit No. 97-136-TV (M-2).  After OG&E submitted a timely and complete Title V renewal application, the 2003 Title V permit remained in effect until the second Title V operating permit was issued for Muskogee on September 8, 2009.  Ex. 7, Title V Permit No. 2005-271-TVR. The plant's current operating permit is a modification of the 2009 permit issued on March 25, 2013.  Ex. 8, Title V Permit No. 2005-271-TVR (M-1).

8.    Each Title V operating permit expressly nullified and superseded prior permits. For example, in Muskogee's 2003 Title V permit, specific condition 8 established that the 2003 Title V permit superseded "all previous Air Quality permits except for Acid Rain Permit No. 97-136-AR."  Ex. 6 at Specific Condition 8.  The current Title V permit establishes the following in

specific condition 14:  "This permit supersedes all previous operating permits, which are now null and void."  Ex. 8.

9.   The current Title V permit specifies that compliance with the PM emissions limit of 212 lb/hr is demonstrated by conducting a performance test using EPA Method 201 "at least once during the term of the operating permit."  *See* Ex. 8, at Specific Condition 9 p. 12.

10.  Exhibit 9 contains a copy of performance test results for PM emissions from Muskogee Unit 6 in June 2006 using EPA Method 5 for filterable PM and EPA Method 202 for condensable PM.  As shown in Exhibit 9, the emission rate from Unit 6 during the 2006 performance test was 46.29 lb/hr of filterable PM, and 98.40 lb/hr of total PM (filterable plus condensable), relative to a permit limit of 212 lb/hr.

11. On April 29 and 30, 2014, OG&E conducted another performance test of PM emissions using updated EPA test methods (Method 201 for filterable PM and Method 202 for condensable PM).  As shown in Exhibit 10, the emission rate from Unit 6 during the 2014 performance test was 72.8 lb/hr of filterable PM and 198.8 lb/hr of total PM, relative to a permit limit of 212 lb/hr.

## STANDARD OF REVIEW

Summary judgment is proper where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  An issue is "material" if "under the substantive law it is essential to the proper disposition of the claim."  *Adler*, 144 F.3d at 670.  "If a reasonable trier of fact could not return a verdict for the nonmoving party, summary judgment is proper."  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  The nonmoving party must, "at a minimum," direct the court to facts "which

establish a genuine issue for trial." *Id.*  It is insufficient for the nonmovant to "rely on unsupported allegations without 'any significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  When the nonmoving party fails to support their allegations, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323 (internal citations omitted).

## ARGUMENT

## I.   THE STATE CONSENT ORDER PRECLUDES ALL CLAIMS BASED ON OPACITY EMISSIONS PRIOR TO JUNE 2, 2011

The Clean Air Act authorizes citizen groups like Sierra Club to initiate enforcement actions only when the government agencies with primary enforcement authority fail to act.  *See Wason Ranch Corp. v. Hecla Mining Co.*, No. 05-cv-00838-WDM-PAC, 2006 U.S. Dist. LEXIS 99086, at *6 (D. Colo. May 9, 2006) (stating that citizen suit provisions "allow[] the government to take responsibility for enforcement of regulations" because citizen suits are only "designed to supplement governmental action"); *see also* 13 Enviro. L. Rep. 10309, 10314 (noting that the "clear legislative intent behind the citizen suit sections is to provide a remedy when government fails to enforce").  Once the government agencies that are the primary enforcers of the Clean Air Act take action, no authority remains to initiate a separate citizen suit.  *See Sierra Club v. Two Elk Generation Partners, L.P.*, 646 F.3d 1258, 1263-1264 (10th Cir. 2011) (stating that citizen suits are barred when "the Administrator or State has commenced and is diligently prosecuting an enforcement action").  This understanding of the Clean Air Act's structure requires the dismissal of Sierra Club's remaining claims, all of which are duplicative of a previous enforcement action against OG&E by the State.

ODEQ is the administrative agency charged with implementing the Clean Air Act in Oklahoma. 40 C.F.R. Part 52 Subpart LL (promulgating federal approval of Oklahoma's Clean Air Act SIP). Thus, ODEQ is responsible for issuing permits—including PSD and Title V permits—and authorizing air emissions in compliance with applicable SIP requirements. ODEQ also initiates civil enforcement actions to address violations of permit requirements. 27A O.S. § 2-5-105(14). In this role, ODEQ filed a civil action against OG&E in Oklahoma state court on May 17, 2011 to address what it considered to be violations of the opacity standards applicable to Muskogee Unit 6. The matter was ultimately settled, and required OG&E to reduce opacity emissions and change how the facility operated its equipment for controlling both opacity and PM emissions. *See* Ex. 2, Consent Order at ¶¶ 33-34. OG&E also agreed to pay civil penalties and to provide quarterly reports describing the measures implemented to address the alleged violations during the previous quarter and the schedule for implementing any additional planned measures. *See id.* The settlement was embodied in a consent judgment. *See* Ex. 1, Order on Unopposed Motion for Entry of Consent Order (June 2, 2011).

The preclusive effect of a state court judgment, like the consent judgment, in a subsequent federal lawsuit is determined by the full faith and credit statute, 28 U.S.C. § 1738, which directs a federal court to refer to the preclusion law of the state in which the prior judgment was rendered. *See Two Elk Generation Partners,* 646 F.3d at 1263-65; *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 375 (1985). The purpose of the doctrine of claim preclusion is "to relieve the parties of the cost and vexation of multiple lawsuits, conserve the resources of the judiciary, and by preventing inconsistent decisions, encourage reliance on adjudication." *Feightner v. Bank of Okla.*, 65 P.3d 624, 634 (Okla. 2003).

Under Oklahoma law, "[c]laim preclusion bars relitigation by parties *or their privies* of issues which either were or could have been litigated in a prior action which resulted in a prior judgment on the merits." *State ex rel. Tal v. Oklahoma City*, 61 P.3d 234, 245 (Okla. 2002) (emphasis added); *see also Read v. Read*, 57 P.3d 561, 567 n.18 (Okla. 2001). Thus, claim preclusion under Oklahoma law has three basic elements: (1) identity of the cause of action in both suits; (2) a final judgment on the merits in an earlier action; and (3) identity of parties or their privies in the former and current action. *See State ex rel. Tal*, 61 P.3d at 245. In elaborating on the three basic elements of claim preclusion, both the Tenth Circuit and Oklahoma courts make it clear that the Consent Order stops Sierra Club from bringing its remaining claim against OG&E.

### A.    The Consent Order Resolved the Same Cause of Action that Sierra Club Asserts in This Case

The scope of a "cause of action" is determined by reference to the transaction, occurrence, or wrongful act from which the action arises. *See Retherford v. Halliburton Co.*, 572 P.2d 966, 969 (Okla. 1977). Different theories of liability may be asserted as grounds for recovery on a single cause of action, but it is the operative events that underlie a party's claim which constitute the "cause of action." *Resolution Trust Co. v. Greer*, 911 P.2d 257, 260-61 (Okla. 1995). "Thus, no matter how many 'rights' of a potential plaintiff are violated in the course of a single wrong or occurrence, damages flowing therefrom must be sought in one suit or stand barred by the prior adjudication." *Id.* at 260 n.5 (quoting *Retherford*, 572 P.2d at 968-69).

The Consent Order resolved the same "cause of action" that Sierra Club asserts in this case. The Consent Order was designed to resolve all alleged exceedances of the opacity emission limit and to put OG&E on a mandatory compliance schedule for future emissions. *See* Ex. 2, Consent Order at ¶ 47 (compliance with the order fully satisfies OG&E's liability to the

State for the alleged exceedances).  In negotiating the Consent Order, the State had access to OG&E's reports of excess opacity emissions from Muskogee Unit 6.  The State also conducted a long-term investigation of the plant leading up to execution of the Consent Order.  *See id.* at ¶¶ 4-5, 7, 9, 11, 13, 14 (describing numerous state compliance evaluations of opacity emissions from Muskogee Unit 6).  Since this evidence shows that the State of Oklahoma and OG&E intended for the Consent Order to comprehensively address all grounds for alleging violations prior to June 2, 2011, *see id.* at ¶ 47, Sierra Club cannot litigate those same claims again in this case.  *See Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1468 (10th Cir. 1993).

For similar reasons, the Consent Order also precludes Sierra Club from using alleged opacity exceedances to try to assert a separate cause of action for PM emission limit violations. This is because Oklahoma law delineates a cause of action for purposes of claim preclusion by reference to the underlying operative events or occurrence from which the action arises.  *See Retherford*, 572 P.2d at 969; *Resolution Trust Co.*, 911 P.2d at 260-61.  The Consent Order precludes any cause of action arising from the same emission events it addressed, regardless of whether the cause of action is framed as a violation of the emission limit for opacity or PM. Thus, the Consent Order resolved the same claims that Sierra Club now alleges based on opacity and PM emissions occurring between August 12, 2008[1] and June 2, 2011.

---

[1] Consistent with the Court's ruling on OG&E's Motion to Dismiss, the general federal statute of limitations and the concurrent remedy doctrine restrict Sierra Club's entire opacity and PM claim to alleged violations occurring within five years of the filing of the instant action, *i.e.* on or before August 12, 2008.  28 U.S.C. § 2462; *see Sierra Club v. DTE Energy*, No. 13-CV-11103, 2013 WL 6910431, at *6-7 (E.D. Mich. Oct. 7, 2013), *report and rec. adopted*, 2014 WL 29127 (E.D. Mich. Jan. 3, 2014) (dismissing claims for equitable relief based on alleged opacity violations "to the extent that Plaintiff's claims for civil penalties are barred" by the five-year statute of limitations).

**B.      The 2011 Consent Order Established a Final Judgment on the Merits**

The second element of claim preclusion, concerning the finality of the prior judgment on the merits, is easily met in this case because the Tenth Circuit has recognized that, "a consent decree is afforded the same effect as any other judgment," and "the preclusive effects should be measured by the intent of the parties." *Satsky*, 7 F.3d at 1468 (barring plaintiff from re-litigating any claim covered by a consent decree entered into between the State of Colorado and the defendant, where the consent decree reflected an intent to resolve all claims raised by the State in the prior action); *see also Ingram v. Knippers*, 72 P.3d 17, 22 (Okla. 2003) ("A consent judgment is entitled to the same preclusive treatment as a contested judgment.").  To determine intent of the parties, the court "must look to the consent decree itself to determine if the decree represents a final judgment on the merits." *Satsky*, 7 F.3d at 1468.

The Consent Order broadly "supersedes and closes all allegations of noncompliance with opacity emission limits and associated monitoring and reporting requirements as described in" various ODEQ records.  Ex. 2, Consent Order, at 1.  As mentioned previously, the Consent Order also expressly provides that the state "will not pursue any other remedy, sanction or relief that might otherwise be available to address the issues of noncompliance identified in this Order," *Id.* at ¶ 47.  And it sets out a future compliance schedule to "substitute for compliance with the regulatory requirements that are specifically covered by this Order." *Id.* at  ¶ 44.  These provisions make clear the parties' intent to establish a final judgment on the merits of the state's claims. *See Satsky*, 7 F.3d at 1468.

**C.      Sierra Club's Interests Were Represented by ODEQ and Privity Exists With Respect to Parties in the Former Action**

The Consent Order also satisfies the final element for establishing claim preclusion because the State represented the interests of its citizens in that action.  Privity is established

where a person has "the same interest, character, or capacity as the party against whom the prior judgment was rendered." *In re Hyde*, 255 P.3d 411, 415 (Okla. 2011).  Under Oklahoma law, "[t]here are no hard and fast rules" concerning privity, and "the existence of privity depends upon the circumstances and requires a person so identified in interest with another that he represents the same legal right." *Wilson v. City of Tulsa*, 91 P.3d 673, 677 (Okla. Civ. App. 2004) (internal quotations omitted).  Privity can exist due to the doctrine of *parens patriae*, where the state represents the interests of its citizens in litigation.  *See Satsky*, 7 F.3d at 1469; *see also* 17 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4047 (3d ed. 1988)  ("Parens patriae standing has been explained on the ground that the plaintiff state is not merely advancing the rights of individual injured citizens, but has an additional sovereign or quasi-sovereign interest.").

In the prior state court action, ODEQ had the "same interest, character, or capacity" as Sierra Club in the current case, and therefore privity exists between them.  *See In re Hyde*, 255 P.3d at 415.  This privity is apparent from the doctrine of *parens patriae*.  Under that doctrine, "[w]hen a state litigates common public rights, the citizens of that state are represented in such litigation by the state and are bound by the judgment." *Satsky*, 7 F.3d at 1469; *see also City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 341 (1958) (holding that lower court's decision was binding "not only against the State, but also against its citizens . . . for they, in their common public rights as citizens of the State, were represented by the State in those proceedings, and, like it, were bound by the judgment").  In *Satsky*, the court applied this doctrine to conclude that citizens of Colorado were in privity with the State of Colorado where the State previously filed suit against a defendant to protect its citizens against air pollution.  7 F.3d at 1469; *see also EPA v. City of Green Forest*, 921 F.2d 1394, 1404 (8th Cir. 1990) ("[O]nce a state represents all of its

citizens in a *parens patriae* suit, a consent decree or final judgment entered in such a suit is conclusive upon those citizens and is binding upon their rights.").

The Tenth Circuit also recently applied the doctrine of *parens patriae* to bar a citizen suit by Sierra Club where the Wyoming Department of Environmental Quality had already raised the same claim in an administrative proceeding.  Indeed, in *Two Elk Generation Partners,* the Tenth Circuit held that the citizens of Wyoming were in privity with the Wyoming Department of Environmental Quality with respect to a previous administrative proceeding because the DEQ is "the administrative agency statutorily charged with carrying out the purposes of the Environmental Quality Act, including the promulgation, administration and enforcement of the Act's provisions and any rules and regulations."  646 F.3d at 1268.  The court found that even under a stricter standard of privity applied by other circuits, "DEQ was diligent in requiring compliance with the CAA" in the prior proceedings because "[e]ven though Sierra Club disagrees with the position DEQ took and was not satisfied with the result of the Council's 2005 Order, DEQ acted to ensure that Two Elk commenced construction . . . in accordance with the PSD Permit."  *Id.* at 1269.  "Thus, DEQ was in privity with Sierra Club, which represents the interests of citizens of Wyoming."  *Id.* at 1270-71.  Therefore, Sierra Club could not "attempt to second guess the position taken by DEQ and the final decisions made" in the prior state proceeding because the "policy of finality of judgments favors against allowing Sierra Club to relitigate issues that have already been decided."  *Id.* at 1272.

A nearly identical scenario exists here.  Sierra Club filed its claim pursuant to 42 U.S.C. § 7604(a)(3) on behalf of its "members, staff and volunteers [who] live, work, recreate, and exercise in the areas most immediately affected by the Muskogee plant."  (Compl. at ¶ 17.) Considering that ODEQ filed the previous lawsuit on behalf of both "injured citizens" and due to

its "quasi-sovereign interests," *see Satsky*, 7 F.3d at 1469, Sierra Club is in privity with ODEQ with respect to the emissions covered by the Consent Order since it asserts the "same legal right," *Wilson*, 91 P.3d at 677.

*     *     *     *

Meeting all three elements for claim preclusion under Oklahoma law, Sierra Club's claims based on emissions prior to June 2011 are thus barred by the entry of the Consent Order in the state court action.

## II. ALL CLAIMS BASED ON OPACITY EMISSIONS AFTER THE 2011 CONSENT ORDER FAIL

The Consent Order sets the standard of compliance for opacity emissions from Muskogee Unit 6 effective June 2, 2011 forward, and OG&E has operated in compliance with the Consent Order since that date. Its quarterly reports show that OG&E has implemented additional control measures and complied with all opacity limitations after June 2, 2011. Sierra Club cannot now seek to alter or challenge the requirements of the Consent Order in this proceeding.

Effective June 2, 2011, the Consent Order established a schedule for reducing the percentage of total time that opacity emissions exceed 20% at Muskogee for any reason (including during periods of startup and shutdown), and also required OG&E to complete certain work related to the emissions control technology at the plant. The Consent Order set a future compliance schedule to "substitute for compliance with the regulatory requirements that are specifically covered by this Order." Ex. 2, Consent Order at ¶ 44. The injunctive relief set out in the form of a compliance schedule in the Consent Order remains in effect today.

The Consent Order has the effect of a final state court judgment on the merits. *See id.* at 1 (broadly "supersed[ing] and clos[ing] all allegations of noncompliance with opacity emission limits and associated monitoring and reporting requirements as described in" various ODEQ

-12-

records), ¶ 47 ("[I]f [OG&E] satisfies the requirements of this Order, [the State] will not pursue any other remedy, sanction or relief that might otherwise be available to address the issues of noncompliance identified in this Order.").  As such, Sierra Club cannot file a citizen suit second-guessing the terms of the Consent Order when the state determined that future claims were barred if OG&E complied with the Consent Order going forward.  *See Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 477 (6th Cir. 2004).  As the Sixth Circuit explained in *Ellis*, citizens have opportunities to ensure compliance with a consent order that has previously been entered between a party and the state, but petitioning the court for stricter enforcement measures than those set forth by the consent decree is not an option.  *Id.*  ("[T]he Ellises and the public interest they represent are not without a federal remedy. . . .  The Ellises could have petitioned the EPA to enforce the consent decrees.  They could have petitioned the EPA or the court to obtain a modification of the consent decree.  And they could have filed a new lawsuit after supplying the requisite notice to the EPA, to Kentucky and to Harsco and Gallatin.  *What the Ellises cannot do once the EPA becomes involved is wait until the EPA has resolved its own claims against the polluter, then obtain stricter enforcement than the Government negotiated.*") (emphasis added); *see also Lockett v. EPA*, 319 F.3d 678, 690 (5th Cir. 2003) ("The language of the Compliance Order clearly contemplates ongoing enforcement to assure that past violations are not repeated in the future.").  OG&E diligently worked to implement the injunctive relief provided by the Consent Order, as demonstrated by the quarterly reports, and remains subject to the Consent Order's emission reduction requirements.  *See* Ex. 11, OG&E Quarterly Reports On Consent Order Compliance (2011-2014).  In fact, OG&E *continues to submit* quarterly reports to the state on its compliance with the Consent Order's opacity reduction schedule.  *See id.* (providing a copy of the report submitted April 30, 2014).  Sierra Club has not alleged, and cannot establish,

any violation of the Consent Order.  Likewise, Sierra Club is barred from its attempt to obtain

stricter limitations than those determined appropriate by the state and set forth by the Consent

Order.  *See Ellis*, 390 F.3d at 477; *Lockett*, 319 F.3d at 690.

Consequently, there is no genuine issue of material fact regarding OG&E's compliance

with the opacity standard after June 2, 2011.

### III.   OG&E HAS DEMONSTRATED COMPLIANCE WITH THE PARTICULATE MATTER EMISSIONS LIMIT USING THE ONLY ADMISSIBLE EVIDENCE

According to the monitoring methods and procedures established in the Title V permit for

Muskogee Unit 6, which is the only evidence that the court may consider in this citizen suit,

OG&E has complied with the PM emission limit.  The Muskogee Title V permit requires OG&E

to demonstrate compliance with the PM limit through emissions testing.  As shown in Exhibits 9

and 10, tests conducted in 2006 and 2014 demonstrated compliance with the PM limit of 212

lb/hr.  No other compliance tests were required to be conducted and no other evidence of

compliance with the emission limit is admissible.  Yet Sierra Club has indicated it may attempt

to use opacity as an indicator of PM emissions.

Prior to February 27, 2009, proof of noncompliance with an applicable emissions

standard in Oklahoma for all purposes was limited to the means and methods specified in the

Title V permit for demonstrating compliance with that standard.  *See Sierra Club v. TVA*, 430

F.3d 1337, 1352-53 (11th Cir. 2005); *Sierra Club v. Energy Future Holdings Corp.*, No. W-12-

CV-108 (W.D. Tex. Feb. 10, 2014); *BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 615 F. Supp.

2d 765, 775 (N.D. Ill. 2009).  On that date, EPA approved a rule for inclusion in the Oklahoma

SIP establishing that "any credible evidence may be used for the purpose of establishing whether

a person has violated or is in violation of any such plan."  73 Fed. Reg. 79,400 (Feb. 27, 2009)

(approving O.A.C. 252:100-45-5).  But in promulgating its credible evidence rule, the State of

Oklahoma made clear that the rule was intended "to allow *a permitted source* to use any credible evidence to demonstrate compliance and [to] allow *the EPA* to use any credible evidence to establish violations and enforce the Oklahoma SIP." Ex. 12, 12 Ok. Reg. 1629 (June 1, 1995) (emphasis added). Oklahoma did not indicate that the credible evidence rule applied to anyone but a permitted source or the EPA. Therefore, the credible evidence rule in Oklahoma's SIP does not apply in citizen suits like the instant case.

Another district court recently explained the sound legal and practical reasons for barring the application of the credible evidence rule in citizen suits as follows:

> While the credible evidence rule can be incorporated into a Title V permit as a means to determine compliance, the rule "*creates no new rights or powers for citizen enforcers.*" TVA, 430 F.3d at 1353 (quoting Credible Evidence Revisions, 62 Fed. Reg. 8314- 8318). If expanded to citizen suits, a permit holder would have to defend itself against every conceivable measurement, test, or theory that can be submitted as credible evidence to challenge a power plant's compliance with its Title V permit. *See EME Homer City*, 727 F.3d at 298 ("The plain text of Title V, in turn, lists only two ways in which it can be violated: operating without a Title V permit or violating the terms of a Title V permit while operating a source."). Such a position would undermine the permit's objective as the "source-specific bible for Clean Air Act compliance." *Virginia v. Browner*, 80 F.3d 869, 873 (4th Cir. 1996). *For that reason, a concerned citizen is limited to the compliance requirements, as defined in the Title V permit, when pursuing a civil lawsuit for CAA violations. TVA,* 430 F.3d at 1353.

Ex. 13, Order, *Sierra Club v. Energy Future Holdings Corp.*, No. 12-108, Dkt. 240, at 16 (W.D. Tex. Feb. 10, 2014) (emphasis added). Thus, as a matter of law, Sierra Club is unable to offer any evidence outside the testing method specified by the Title V permit in support of its claim related to PM emissions, and results of this testing method show compliance with all applicable PM limits by OG&E.

Even if opacity emissions information were legally cognizable evidence of PM emissions, it could not be considered in this case due to the Consent Order. As previously explained in detail, *see* Section I, the Consent Order has the effect of precluding any claim based

on the opacity of emissions, whether framed as a violation of the emission limit for opacity or PM.  In addition, opacity is a measurement of light transmission, not the mass level of PM emitted.  Evidence of opacity emissions at Muskogee Unit 6 simply does not establish an exceedance of the PM emissions limit.  *See* 79 Fed. Reg. 8,645, 8,651 (Feb. 13, 2014) ("Because increases in the quantity of smaller particles may be accompanied by decreases in the quantity of larger particles, and vice versa, opacity increases do not always reflect corresponding increases in the mass of PM emissions."); 76 Fed. Reg. 18,870, 18,876 (Apr. 6, 2011) (recognizing that "there are circumstances in which a source will record opacity levels in excess of a 20 percent standard without necessarily increasing its mass emissions").  Therefore, summary judgment in favor of OG&E on the claim for alleged PM violations is proper.

## CONCLUSION

For the foregoing reasons, OG&E respectfully requests that this Court grant its Motion for Summary Judgment.

Date: May 21, 2014                       Respectfully Submitted,

                                    s/ Brian J. Murray
                                      Brian J. Murray
                                        bjmurray@jonesday.com
                                      Charles T. Wehland
                                        ctwehland@jonesday.com
                                      JONES DAY
                                      77 West Wacker Drive, Suite 3500
                                      Chicago, Illinois  60601-1692
                                      Telephone:  (312) 782-3939
                                      Facsimile:   (312) 782-8585

                                      Donald K. Shandy (OBA No. 11511)
                                        DShandy@ryanwhaley.com
                                      Patrick R. Pearce, Jr. (OBA No. 18802)
                                        RPearce@ryanwhaley.com
                                      RYAN WHALEY COLDIRON SHANDY
                                      PLLC
                                      119 N. Robinson Avenue, Ste 900
                                      Oklahoma City, OK 73102
                                      Telephone:   (405) 239-6040
                                      Fax:          (405) 239-6766

                                      *Counsel for Defendant Oklahoma Gas
                                      and Electric Company*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2014 I electronically transmitted the attached Opening Brief in Support of OG&E's Motion for Summary Judgment the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

> Jacquelyn Dill
> DILL LAW FIRM, PC
> 12101 N MacArthur Blvd, Ste 200
> Oklahoma City, OK 73162
> (405) 722-9600
> Fax: (405) 694-4568
> jdill@dilllawfirm.com
>
> David C. Bender
> MCGILLIVRAY WESTERBERG & BENDER
> 211 S Paterson, Ste 320
> Madison, WI 53703
> (608) 310-3560
> Fax: (608) 310-3561

> s/ Brian J. Murray
> Brian J. Murray